UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN    C L O S E D
SOUTHERN DIVISION

BRYAN ALLEN JACKSON, #353082,

        Petitioner,

v.                                            Case Number: 08-cv-11335
                                              Honorable Anna Diggs Taylor

NICK LUDWICK,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

Petitioner Bryan Allen Jackson, a state inmate currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. In April 2006, an Oakland County, Michigan, circuit court jury convicted Petitioner of armed robbery, MICH.COMP.LAWS § 750.529. He was sentenced, as a fourth-degree habitual offender, MICH.COMP.LAWS § 769.12, to twelve to forty years in prison for that conviction. In his *pro se* pleadings, Petitioner argues that (1) his confrontation rights were violated when the incriminating statements of a non-testifying co-defendant were admitted into evidence, (2) the prosecutor encouraged the jury to consider those statements as substantive evidence against him, and (3) his trial counsel failed to move for a mistrial on that basis. For the reasons stated below, the Court will deny the petition. The Court also declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

## I. BACKGROUND

Petitioner's troubles in this case result from an October 29, 2005 robbery at Lawrence Technological University (LTU) in Southfield, Michigan. Under the prosecution's theory, Petitioner, along with four co-defendants, robbed three students at gunpoint at 2:30 a.m., in the LTU parking lot. The prosecution's evidence came from the testimony of four eyewitnesses and the arresting officers who apprehended Petitioner. Petitioner was tried, along with co-defendant, Angelo Arnold. Trial began on April 17, 2006. Testimony revealed the following.

Adam Phillips was first to testify. He testified that, on the night in question, he returned to the parking lot of his dormitory along with three of his friends, James Burns, Carla Edwards, and Amy Blankenship; the group was returning from a Halloween party. According to Phillips, as they got out of the car, a maroon, four-door car pulled up behind them. He testified that three black males emerged from that car and robbed them. He said the driver of that car remained inside. Phillips described his robber as a six foot, one inch man, weighing about two hundred pounds. He said the man stuck a revolver in his side and demanded money; Phillips said he gave the man the four dollars that was in his wallet. According to Phillips, the man then got back into the car, as did the other three men. Phillips said he remembered the license plate number and gave it to the police. He later identified the man who robbed him as Rodriguez Whorten.

James Burns testified next. His testimony corroborated that of Phillips. Burns said he and his three friends, Amy Blankenship, Carla Edwards, and Adam Phillips, were returning from a Halloween party when a dark, maroon-colored sedan pulled in behind his car. According to him, three armed men got out of the car and approached them. He testified that, a man, about six foot two, wearing tan pants and a tan hooded coat, put a gun to his back. He said the man demanded

2

money; he gave the man thirteen dollars. Burns said he could not see the man's face because it was covered with black netting. Burns was unable to specifically identify anyone. He further testified that, after the robbers robbed them, they returned to their car. Burns said a second vehicle then pulled up behind the robbers' car. He said the robbers backed into that car and damaged the rear fender before exiting the parking lot. Both Phillips and Burns described Edwards's reaction to the incident as hysterical.

Edwards testified that either four or five black men drove up in their car. She said one of them jabbed a gun into her side. Edwards was unable to identify that man., but described him as being about her height. She said the man took her purse.

Blankenship testified next. She said she saw a man, wearing a tan Carhartt jacket, grab Burns and demand money. She initially thought it was a Halloween joke but realized it was not after she saw the man's gun. According to Blankenship, there were a total of four men outside the car. She testified that she ran inside the dormitory and called the police. The police arrived at the scene within two minutes.

Sergeant Lawrence Porter, a Southfield Police Officer, testified next. He said he received a call from dispatch about 2:30 a.m., on the night in question; an update call then informed that the suspects had fled the scene. According to Sergeant Porter's testimony, as he was traveling along Ten Mile Road toward LTU, he did not see the described vehicle. However, after patrolling the area, he saw a red Sebring or Stratus waiting at a stop light. He noticed four people inside the car. The license plate number of the car read 8Q48; Sergeant Porter was given a partial plate number of 8M4Q. He then made a U-turn, and the car that was at the stop light turned down a side street and began speeding away. Sergeant Porter testified that a chase ensued.

According to Sergeant Porter, he ended up striking the vehicle head on. He said the car did not stop, but rather drove around him. Shortly after, the car broke down, and all four people inside the car jumped out and ran. Sergeant Porter testified that the passenger in the front seat, later identified as Rodriguez Whorten, dropped a revolver. He said the police also recovered a second gun. Sergeant Porter said a man exited from the rear passenger side of the car; he identified the man as Petitioner. Another man, who was later identified as Angelo Arnold, got out of the rear driver's side door. Sergeant Porter said he ordered the men to the ground but they took off running. He testified that he eventually arrested Arnold.

Officer Christopher Helgert testified next. He said he conducted the interview of Arnold, in which Arnold gave him a statement regarding the incident. Officer Helgert testified to the following. He said he read Arnold his *Miranda*[1] rights and that Arnold indicated that he understood those rights and initialed the form. Arnold indicated that he did not wish to speak to an attorney. Officer Helgert then testified that Arnold claimed that, on the night in question, he drove, along with four other men, to a Southfield apartment. Arnold told the officer that the driver was a black male whom he did not know. Arnold said they then drove to another location and picked up a fourth passenger. According to Officer Helgert, Arnold said "[he] fucked up." (Trial Tr. vol. II, 431-32, Apr. 19, 2006.) Officer Helgert testified that Arnold would not say anything further because he would "just fuck himself more." (Trial Tr. vol. II, 435, Apr. 19, 2006.) Arnold told the officer that his fingerprints might appear on one of the guns. On cross-examination, Arnold's attorney asked Officer Helgert
the following question:

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> He then told you how he was picked up in Hamtramck and he knew a person by the name of Dave, and he drove to the female's house and he knows another individual, Bryan, that they met up with. And then they shortly went to an apartment and they fucked up?

(Trial Tr. vol. II, 441-42, Apr. 19, 2006.) Officer Helgert replied, "Well, part of the answer to that is yes, but that wasn't the sequence." (Trial Tr. vol. II, 442, Apr. 19, 2006.) Petitioner's attorney did not object to that line of questioning.

Officer Andrew Snarey testified next. He was the officer that arrested Petitioner. No weapons or masks were found on either Arnold or Petitioner. Officer Snarey testified that he confiscated a plastic bag with marijuana in Petitioner's coat pocket. He said that, as he was taking Petitioner to the patrol car, Petitioner said, "I didn't do nothing, I thought it was his cousin." (Trial Tr. vol. II, 458, Apr. 19, 2006.)

The officers found Whorten's fingerprints on the car. Petitioner did not testify. Arnold did not testify either.

In closing, the prosecutor emphasized the importance of Arnold's police statement:

> One of the things also that Mr. Arnold told Detective Helgert, which I think is important, is he tells you how many people were in the car. He tells you about the two individuals that picked him up. He tells you about Bryan, Bryan Jackson, and he tells you about himself. Four people, ladies and gentlemen. Look at it. Look at the car.

(Trial Tr. vol. III, 498, Apr. 20, 2006.) Petitioner's attorney objected. Immediately thereafter, the trial judge instructed the jury as follows:

> I want to make it clear that the statement was made and that any statement that's made is only against that Defendant. It does not go to the other Defendant.
> Do you understand that? Any statements made go only to the person who made it and is not inferred or implied in any way to anybody else but that one person.

5

(Trial Tr. vol. III, 499, Apr. 20, 2006.) The trial judge re-instructed the jury similarly at the close of the trial.

The jury found Petitioner guilty of the above-stated charge.

Following his sentencing, Petitioner, through counsel, filed his appeal of right in the Michigan Court of Appeals, raising the following claims:

> I. Mr. Jackson was denied his right to confrontation, due process, and a fair trial when the incriminating statements of a non-testifying co-Petitioner were admitted into evidence at their joint trial.
>
> II. Mr. Jackson was denied his due process right to a fair trial where the prosecutor encouraged the jury to consider a non-testifying co-Petitioner's statement as substantive evidence against Mr. Jackson.
>
> III. Mr. Jackson was denied the effective assistance of counsel when his trial attorney failed to move for a mistrial based on a patent confrontation clause violation.

On September 13, 2007, in an unpublished opinion, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Jackson*, No. 271158, 2007 WL 2684064 (Mich.Ct.App. September 13, 2007). Petitioner then filed an application for leave to appeal that decision in the Michigan Supreme Court, raising the same three claims as raised in the Court of Appeals. The Michigan Supreme Court denied the application on January 22, 2008. *People v. Jackson*, 480 Mich. 1033, 743 N.W.2d 218 (2008).

It does not appear that Petitioner filed a writ of certiorari in the United States Supreme Court or a post conviction motion, pursuant to Mich.Ct.R. 6.500 *et. seq.*, in the trial court. Rather, he filed this habeas petition on March 28, 2008.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions and states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any
>
> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedin2gs.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### III. DISCUSSION

### A. Violation of the Confrontation Clause claim

In his first habeas claim, Petitioner contends that he was denied a fair trial when the attorney for his co-defendant expanded the testimony of Officer Helgert to indicate that Petitioner was with three other individuals on the night of the armed robberies. Petitioner acknowledges that neither the officer nor the assistant prosecutor mentioned his name during the officer's direct examination. However, he argues that when Officer Helgert was being cross-examined by counsel for co-defendant, counsel summarized the officer's testimony and indicated that he was present.

In addressing this claim, the Michigan Court of Appeals stated:

> Defendant first argues that the introduction of a portion of his co[-]defendant's statement through the testimony of another witness violated the Confrontation Clause of the Sixth Amendment. Because defendant did not object to the admission of the co[-]defendant's statement at trial, this issue is unpreserved and is reviewed for plain error that affected substantial rights. *See People v. Pipes*, 475 Mich. 267, 277; 715 NW2d 290 (2006); *People v. McNally*, 470 Mich. 1, 5; 679 NW2d 301 (2004).
>
> The prosecutor does not dispute that defendant was deprived of his Sixth Amendment right to confront the witnesses against him when co[-]defendant's counsel cross-examined the police officer who took co[-]defendant's statement and elicited testimony that placed defendant in the vehicle involved in the armed robbery at the time of the robbery. *Pipes*, *supra* at 274-275. The co[-]defendant did not testify and defendant never had the opportunity to cross-examine him about his statement.
>
> But reversal is not automatically required; rather, defendant must show that the error affected his substantial rights or, stated another way, was outcome determinative. *Pipes*, *supra* at 298. Defendant has not met his burden. Although the challenged statement put him in the car before the robbery took place, the jury could reasonably infer from defendant's presence in the car shortly after the robbery, his flight from police, and one of the victim's testimony describing defendant's clothing as that which was worn by one of the robbers, that he was one of the men who exited the car at the scene of the crime. The statement did not affect the outcome of trial, where there was other substantial evidence that defendant was one of the perpetrators who left the vehicle. Thus, defendant has not shown that the error affected his

substantial rights.

*Jackson*, No. 271158, 2007 WL 2684064, at *1.

Petitioner claims that Arnold's statement to Officer Helgert should not have been admitted at trial because its admission violated his rights under the Confrontation Clause of the United States Constitution. Here, the Court finds that there is a Confrontation Clause issue due to the fact that Petitioner was unable to cross-examine Arnold after his statement was admitted into evidence, because Arnold did not testify at their trial.

The Confrontation Clause provides all criminal defendants the right to confront and cross-examine the witnesses against them. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). The testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). An individual's statement to police officers in the course of an interrogation is testimonial. *Id.* at 52.

However, even if there is a Confrontation Clause violation, Petitioner is not entitled to federal habeas relief if the admission of Arnold's statement was harmless. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993)). In considering whether a Confrontation Clause error is harmless, a court should examine the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony

of the witness on material points; and, (4) the overall strength of the prosecution's case. *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003) (citing *Van Arsdall*, 475 U.S. at 684).

In the instant case, while in custody, Arnold voluntarily gave a statement to Officer Helgert indicating that, on the night of the robbery, he was picked up in Hamtramck by an individual he did not know and another guy that he knew by the name of Dave. He then proceeded to say that the three of them then went to another location and picked up a fourth passenger. Then they went to an apartment in Southfield. When counsel for Arnold sought to clarify the testimony of Officer Helgert, counsel added the name "Bryan" and changed the testimony to indicate that "they fucked up." (Trial Tr. vol. II, 441-42, Apr. 19, 2006.)

Here, the Court finds that Arnold's statement was testimonial in nature; it was made to police during an in-custody interrogation and Arnold did not testify. Although the prosecutor did not introduce evidence from the statement which inculpated Petitioner, counsel for co-defendant did mention Petitioner's first name during his cross-examination of the officer. As such, it is at the very least arguable that Petitioner's rights of confrontation were violated by counsel for co-defendant. *Crawford*, 541 U.S. at 68.

Nevertheless, assuming for the sake of argument that Petitioner is correct in his contention that he was denied his Sixth Amendment right, the Court concludes that the alleged error did not have a substantial impact on the outcome of his trial; the co-defendant's statement was not the primary evidence supporting Petitioner's conviction.

Here, Petitioner never denied that he was present when the armed robberies occurred– which is all Arnold's statement helped to establish. Rather, Petitioner's defense at trial, and throughout the course of the investigation, was that he was merely present when others committed the offense.

When Petitioner was caught by the police fleeing from the crashed car, he told Officer Snarey: "I didn't do nothing, I thought it was his cousin." (Trial Tr. vol. II, 458, Apr. 19, 2006.) It was therefore clear from the beginning of the case that the defense in this case for both Arnold and Petitioner was that they may have been there on the night of the robbery, but that they were merely present when others committed the crime. Thus, the admission of Arnold's statement was cumulative and corroborated that of the other witnesses, in that it put Petitioner and Arnold at the scene. Additionally, it was inconsequential that Arnold's statement seemed to indicate that there were four people in the car. That was not a critical issue at trial; all of the witnesses who thought that there might have been five people in the car were subjected to vigorous cross examination on three separate occasions and all acknowledged that they had never been completely certain.

Moreover, the evidence in this case against Petitioner was far from weak; the prosecutor's case against him was strong. Petitioner's clothing was identified by Edwards. She identified Petitioner as being around her height. Petitioner was in the red Dodge Stratus with the same partial plate license number as relayed by Phillips to the police. Petitioner ran when Officer Porter ordered him to stop, and he was arrested within twenty-five minutes of the robbery. Petitioner never denied being in the car or at the scene of the robbery. And, Edwards's camera and drivers license were also found in the Stratus.

Thus, it was for the jury to make the determination as to whether Petitioner was an active participant in the armed robbery or whether he was merely present when the people he was with robbed the three victims. His defense at trial was not that he was not there but rather that he did not do anything to aid or assist the others. The fact that counsel for co-defendant brought up the fact that Petitioner was in the car before the robbery was not the factor that would have led the jury to

11

convict an otherwise innocent man.

In this case, due to the strength of the other evidence properly admitted, as well as the fact that Petitioner himself never contested the fact that he was with his co-defendants on the night of the robbery, it cannot be said that the admission of Arnold's statement had a substantial impact. Arnold's statement was no more inculpatory than Petitioner's own statement or the fact that he was seen fleeing the scene in the same outfit as described by one of the victims a mere ten minutes after the robbery and in the same car identified by the victims. His defense of mere presence was presented to the jury, supported by the arguments of his attorney as well as the vigorous cross-examination of the victims, and the jury chose to believe the victims.

Against that backdrop, the Court concludes that the Michigan Court of Appeals' decision, regarding this issue, was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is therefore not entitled to habeas relief.

## B. Prosecutorial misconduct claim

In his second claim, Petitioner contends that he was denied a fair trial when the assistant prosecutor stated in his closing argument that Arnold's statement indicated that there were four people in the car when they went to Hamtramck and that Petitioner was one of those individuals. The Michigan Court of Appeals addressed this claim as follows:

> During closing argument, the prosecutor referred to co[-]defendant's statement and used it to argue defendant's participation in the crime. Even assuming that the prosecutor's comment was improper, reversal is not warranted. A prosecutor's isolated statement, even when improper, is subject to harmless error analysis. *See People v. Armentero*, 148 Mich.App 120, 134; 384 NW2d 98 (1986). A defendant bears the burden of showing that the error resulted in a miscarriage of justice. *People v. Hawthorne*, 474 Mich. 174, 181; 713 NW2d 724 (2006). The error justifies reversal if it is more probable than not that it affected the outcome. *People v. Young*, 472 Mich. 130, 141-142; 693 NW2d 801 (2005).

> Defendant has not met his burden of proving that the alleged error resulted in a miscarriage of justice because it is more probable than not that he would have been convicted even without the prosecutor's improper remark. *See Hawthorne*, *supra* at 181; *Young*, *supra* at 141-142. The remark was isolated and the trial court issued a limiting instruction concerning the use of co[-]defendant's statements against each other. In addition, the trial court instructed the jury that the attorneys' statements and questions were not evidence. Juries are presumed to follow their instructions. *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998). Further, as discussed above, the jury could reasonably infer, from defendant's presence in the car shortly after the robbery, his flight from police, and the victim's testimony describing defendant's clothing as that which was worn by one of the robbers, that he committed the crime. The prosecutor's isolated remark did not undermine the reliability of the verdict.

*Jackson*, No. 271158, 2007 WL 2684064, at *1-2.

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). Initially, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused. *Id.* "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)

13

(citations omitted).

Here, the prosecutor's argument was not prejudicial to Petitioner because his defense was not that he was not in the car, but rather, that he was merely present when the others committed the armed robberies. Petitioner's own statement to the police that he thought it was his friend's cousin, the fact that he was in the car when it was fleeing from the police, and the fact that Petitioner himself fled from the police after the crash, together provided the jury with strong evidence that Petitioner was present at the time of the robbery, without the prosecutor's comment.

Furthermore, after the prosecutor's statement, the trial judge gave the jury a limited instruction; the jury was told that they should not use Arnold's statement in any way when they decided the guilt or innocence of Petitioner.

Although it was not proper for the assistant prosecutor to use Arnold's statement with regard to Petitioner, the comment was isolated, not mentioned during the prosecution's case-in-chief, and was cumulative to Petitioner's own statement and to his defense at trial that he was there but that he did not participate in the armed robbery. The argument was made in direct response to the cross-examination of the victims in this case, where it was undisputed that there was some confusion with regard to how many people were involved in the robbery. Thus, taken in context, it is clear that the argument was intended to explain why there was discrepancy.

Against that backdrop, the Court concludes that the Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief regarding his prosecutorial misconduct claim.

### C. Ineffective assistance of counsel claim

In his third habeas claim, Petitioner contends that he was denied the effective assistance of counsel when his attorney failed to move for a mistrial after the prosecutor elicited the above testimony from co-defendant Arnold. Regarding this claim, the Michigan Court of Appeals held:

> Defendant argues that trial counsel was ineffective because he did not ensure that the co[-]defendant's statement was redacted to remove references to defendant. We disagree. While hindsight may demonstrate that redacting the statement would have been prudent, an attorney's behavior cannot be evaluated using hindsight when trying to determine whether he was ineffective. *People v. Rockey*, 237 Mich.App 74, 76; 601 NW2d 887 (1999). On the record before us, we cannot conclude that defendant's counsel would foresee co[-]defendant's counsel violating defendant's constitutional right of counsel. Defendant has failed to demonstrate that defense counsel's conduct fell below the "objective standard of reasonableness under prevailing professional norms." *Toma*, *supra* at 302-303.
>
> Defendant also argues that trial counsel was ineffective for failing to move for a mistrial after co[-]defendant's counsel admitted the statement and then again when the prosecutor argued in closing that the co[-]defendant's statement implicated defendant. A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial. *People v. Haywood*, 209 Mich.App 217, 228; 530 NW2d 497 (1995). We first note that the co[-]defendant's actual statement was not entered into evidence. Rather, the contents of that statement were admitted through a police witness. In addition, the witness never used defendant's name in relaying the statement. It was co[-]defendant's counsel who named defendant when he asked the police witness a question about the statement on cross-examination. As previously discussed, the admission of the contents of the statement was not prejudicial to defendant. And, the prosecution's closing argument is not evidence. In its final instructions, the trial court instructed the jurors that the lawyers' comments, arguments and questions are not evidence. The instruction was sufficient to dispel any possible prejudice. *People v. Long*, 246 Mich.App 582, 588; 633 NW2d 843 (2001). Defendant was not entitled to a mistrial, and trial counsel was not ineffective for failing to make a futile motion. *See People v. Moorer*, 262 Mich.App 64, 76; 683 NW2d 736 (2004).

*Jackson*, No. 271158, 2007 WL 2684064, at *3.

A claim of ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, petitioner must demonstrate that counsel's performance was objectively unreasonable and that he was prejudiced by counsel's action or

15

inaction. *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687-88). Further, "[j]udicial scrutiny of counsel's performance must be highly deferential. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (citation omitted).

The second *Strickland* prong, that of prejudice, requires petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because both prongs must be satisfied to establish ineffective assistance, if petitioner cannot satisfy one prong, the other need not be considered. *Id.* at 697.

As stated, in this case, the defense at trial was clearly established from the onset. Petitioner's attorney acknowledged in voir dire, in his opening argument, and his closing argument that Petitioner was present during the robbery but that, in light of the fact that no one could identify him, and because there was another vehicle present that was never located, the prosecution failed to prove his guilt beyond a reasonable doubt. Defense counsel's trial strategy was reasonable and, because Petitioner was in the fleeing car a mere ten minutes after the robbery, likely the only defense that could have been employed in this case. Since it was not really contested that Petitioner was with the others that night, the fact that Arnold's statement implicated Petitioner in being there did not create a substantial harm to Petitioner's defense. Therefore, Petitioner is not entitled to habeas relief regarding ineffective assistance of counsel claim.

### D.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the habeas petition, the Court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072) (a district judge who has just denied a habeas petition has knowledge of both the record and the relevant law and is often best able to determine whether to issue the COA).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a

certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability. Nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus is **DENIED**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

DATED: November 13, 2009               **s/Anna Diggs Taylor**
                                       ANNA DIGGS TAYLOR
                                       UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 13, 2009.

Bryan Jackson, #353082
St Louis Correctional Facility
8585 N. Croswell Road
St. Louis, MI 48880                    s/Johnetta M. Curry-Williams
                                       Case Manager

18